IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **JDS UNIPHASE CORPORATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 1:06cv200 |
| ) | |
| **ROBERT JENNINGS,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Plaintiff JDS Uniphase Corporation ("JDSU") filed suit against its former employee Robert Jennings for breach of contract, breach of fiduciary duty, conversion, and violation of the Virginia Uniform Trade Secrets Act. Defendant Jennings answered and counterclaimed for breach of his employment contract and retaliatory discharge in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. JDSU promptly moved for summary judgment on the counterclaims. Following full briefing and a hearing, the Court granted summary judgment in a bench ruling on January 19, 2007, finding, *inter alia*, an absence of pretext in JDSU's stated non-retaliatory reason for Jennings' termination. An Order will enter shortly to reflect this ruling.[1] Given this ruling, the sole remaining claims are JDSU's claims against Jennings for (i) breach of contract, (ii) breach of fiduciary duty, (iii) conversion, and (iv) disclosure of trade secrets.

At issue here is JDSU's motion for summary judgment on its breach of contract claim. The essence of the claim is that Jennings had a contract with JDSU that precluded him, after

---

[1] Entry of an Order to this effect was delayed to accommodate an effort by the parties to settle this matter. *See JDS Uniphase Corp. v. Jennings*, No. 1:06cv200 (E.D.Va. January 19, 2007) (Order memorializing, in part, bench ruling on counterclaims). The parties now report that this effort was not fruitful.

leaving JDSU's employ, from disclosing or removing JDSU's proprietary information, and that Jennings breached this agreement by removing and retaining copies of proprietary documents after his termination.

## I.

The facts pertinent to the breach of contract claim are essentially undisputed and may be succinctly stated. Jennings was employed by JDSU as director of its tax accounting. He was previously employed by Acertna, Inc. in a similar position when Acertna was acquired by JDSU, a publicly traded company, in August 2005.

Jennings' job at Acertna and JDSU was to identify tax problems and propose solutions to them. During his tenure at Acertna, Jennings did precisely that, raising numerous tax issues with Acertna executives, including, *inter alia*, problems with (i) the legal characterization of Acertna's emergence from bankruptcy as a purchase/sale rather than a reorganization, (ii) Acertna's tax characterization of certain stock options, (iii) insufficient payment of profit-sharing in Mexico, (iv) unexplained reserves on the books of the company's German subsidiary, and (v) possible liability for corporate income tax and Value Added Tax in various foreign jurisdictions. The characterization of the options was particularly problematic, as Jennings disagreed with tax advice given to Acertna by one law firm, Shaw Pittman, regarding the characterization of the options. Because Jennings, Acertna CFO Grant Barber, Acertna CEO John Peeler, and Acertna General Counsel Peter Keeley could not agree upon a resolution, the advice of a second law firm, Baker McKenzie, was solicited. Baker McKenzie vindicated Jennings' position, resulting in greater tax liability for Acertna. Although Jennings had disagreements with his supervisors regarding these tax issues, he stated that no one at Acertna ever told him "not to do his job" or

discouraged him from raising tax problems.

When JDSU acquired Acertna, it offered Jennings employment as the senior tax executive, in part because of favorable recommendations from his supervisors at Acertna, Barber and Peeler.  At JDSU, Jennings served at the director level and reported directly to JDSU's CFO. Jennings' Letter Agreement with JDSU stated that Jennings could be fired with or without cause, and further defined "cause" to include "willful failure . . . to comply with the written or known policies and procedures of the Company including but not limited to the JDS Uniphase Corporate Code of Business Conduct."  The Letter Agreement further provided that if Jennings were fired without cause, he would receive severance pay equal to six months of his base salary.  Jennings signed the Letter Agreement.

A further condition of Jennings' employment by JDSU was that he sign a Proprietary Information Agreement (PIA).  He did so.  The PIA provided that Jennings would not, without the permission of an appropriate officer of JDSU,

> disclose any proprietary information . . . to anyone outside the company, or use, copy, publish, summarize, or *remove from company premises such information (or remove from the premises any other property of the company)* except . . . i. to the extent necessary to carry out [his] responsibilities as an employee of the company, or ii. after termination of [his] employment, as specifically authorized in writing.

(Emphasis added).

At JDSU, Jennings had two main assignments, namely, (i) identifying a new business model to incorporate Acertna into JDSU, and (ii) discovering any hidden tax problems for JDSU. Jennings frequently discussed tax issues with his supervisor David Vellequette, JDSU's CFO. Jennings' working relationship with Vellequette was similar to the working relationship Jennings had with Acertna's CFO, Grant Barber – both were marked by extensive professional discussions

of the company's tax problems and constructive differences of opinion, but no personal conflict.

The series of events leading to Jennings' termination began on October 12, 2005, when JDSU's Senior Human Resources Manager, Karen Schmidt, made a trip to the office where Jennings was based. While there, Schmidt learned from another JDSU employee that Jennings had hired a temporary accounting employee who had never been screened by JDSU's Human Resources Department.[2] This temporary employee was also employed by an accounting firm where Jennings' ex-wife[3] was a partner. Jennings confirmed that he had hired the temporary employee and had deliberately ignored the Human Resources screening process. Following this, Jennings advised Schmidt that he believed his actions were defensible, but that he would nonetheless terminate the temporary employee, noting that "I take full responsibility for my actions and accept the consequences thereof."

The next day, Schmidt wrote an email to Vellequette and her supervisor Garry Ronco recommending Jennings' termination and noting that the hiring of the temporary employee raised questions about the soundness of Jennings' judgment. Ronco agreed, citing Jennings' failure to follow company policy despite his director-level position. Neither Ronco nor Schmidt were aware of Jennings' putatively protected whistleblower activity at the time they recommended termination. Vellequette, the JDSU officer who made the final decision regarding termination,

---

[2] That the employee had not been screened by Human Resources meant that he had not passed a background check, signed a nondisclosure form, or provided proof of eligibility to work in the United States, all of which are required to work at JDSU.

[3] The record reflects that JDSU believed at the time the temporary employee was hired that Jennings' wife was a partner in the accounting firm that furnished the temporary employee. Jennings contends, and JDSU does not dispute, that in fact Jennings and his wife had divorced by that time.

agreed that Jennings should be terminated for his violation of company policies, relying in part on recommendations for termination on this ground from Ronco, Schmidt, and Andrew Pollack, JDSU's in-house counsel.  He also relied on his own assessment that Jennings was unable to work effectively with the rest of JDSU's financial team to integrate JDSU and Acertna – a task which was one of Jennings' primary responsibilities.

JDSU did not immediately terminate Jennings because after the termination decision was made in early November 2005, but before it could be implemented, Jennings requested emergency medical leave pursuant to the Family and Medical Leave Act.  The next day, JDSU received a letter from Jennings' attorney, claiming that Jennings had been the victim of unlawful retaliation in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A.  JDSU then placed Jennings on paid administrative leave while investigating the allegations.  The investigation commenced circa November 4, 2005, and was not completed until January 27, 2006.  Ultimately, the investigation concluded that Jennings' allegations were unfounded.  Accordingly, Jennings was formally terminated on January 30, 2006.

Jennings alleges this termination was a wrongful retaliation against him for reporting tax problems to senior management.[4]  JDSU denies this and avers that the cause for Jennings'

---

[4] Reporting to one's superiors activities an employee reasonably believes constitute mail fraud, wire fraud, bank fraud, securities fraud, or violation of the securities laws or SEC rules is protected activity under the Sarbanes-Oxley Act.  18 U.S.C. § 1514A(a).  Reporting suspected tax fraud or understatement of income is not explicitly listed as a protected activity but nonetheless constitutes protected activity if the employer's tax fraud or understatement of income is part of a scheme to commit mail fraud, wire fraud, or securities fraud, or to violate SEC rules. Authority construing the scope of Sarbanes-Oxley protected activity is sparse; only three published decisions address this issue, none of which involves reports of tax fraud or false reporting of taxable income.  *See Collins v. Beazer Homes, Inc.*, 334 F. Supp. 2d 1365 (N.D.Ga. 2004) (employee's reasonable belief that activity is protected is sufficient); *Brady v. Caylon Securities*, 406 F. Supp. 2d 307 (S.D.N.Y. 2005) (protection does not extend to privately traded

discharge was his hiring of a temporary employee without the appropriate and required authorization from JDSU's Human Resources Department, as well as Jennings' inability to work with the rest of the JDSU team to integrate JDSU and Acertna.

During its investigation of Jennings' allegations of retaliation – that is, after the decision to fire Jennings had been made, but before it was implemented – JDSU became aware that Jennings was in possession of numerous privileged or confidential JDSU documents, including emails between company employees and between management and outside counsel, opinion letters from company tax attorneys, company valuations, copies of contracts, business models, and invitations to, and discussions of, company meetings. JDSU sought to recover possession of these materials via a motion for a preliminary injunction. Following a hearing, the materials were ordered to be delivered to the Court's custody, where they remain, and are the subject of JDSU's breach of contract claim and the motion at bar. *See JDS Uniphase Corp v. Jennings*, No. 1:06cv200 (E.D.Va. March 8, 2006) (Order granting in part and denying in part the preliminary injunction).

## II.

Summary judgment should be granted when the record demonstrates there is no disputed issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. When, as here, a summary judgment motion is made by a party who would bear the burden of proof at trial, summary judgment is appropriate only where the movant demonstrates

---

companies); *Fraser v. Fiduciary Trust Co., Int'l.*, 417 F. Supp. 2d 310 (S.D.N.Y. 2006) (general inquiries by employee into wrongdoing do not constitute protected activity). In any event, the analysis here has proceeded on the assumption that Jennings' complaints to his superiors concerning tax problems constitute Sarbanes-Oxley protected activity.

that no triable issue of fact exists as to any element of the claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, where a motion is made and properly supported, an adverse party must set forth specific facts showing the existence of a triable issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  Here, no disputes of material fact are evident and Jennings has set forth no specific facts showing that a triable issue of material fact exists concerning JDSU's breach of contract claim.  Accordingly, it is appropriate to dispose of JDSU's contract claim on summary judgment.

It is undisputed that a substantial number of the documents in issue contain proprietary information within the meaning of the PIA, and that Jennings retained these documents after his termination despite requests that he return them.  This was a clear breach of the PIA.  Yet, the analysis does not end here, for although Jennings does not contest these underlying facts, he asserts that the conclusion of a breach does not follow because the PIA is unenforceable as contrary to California public policy.  Specifically, Jennings points to the California legislature's proclamation that it is their state's public policy to

> encourage employees to notify an appropriate government or law enforcement agency when they have reason to believe their employer is violating laws enacted for the protection of corporate shareholders, investors, employees, and the general public.

2003 Cal. Adv. Legis. Serv. 484 § 1.[5]  This generalized declaration of public policy in favor of whistleblowing, in Jennings' view, renders the PIA unenforceable insofar as it impedes his assertion of a Sarbanes-Oxley claim.  If Jennings' public policy argument is correct, JDSU's

---

[5] Sarbanes-Oxley is itself an embodiment of a federal policy encouraging whistleblowers to come forward, and the effect of the California declaration, if any, is to encourage liberal construction of whistleblower statutes by California courts or other courts applying California law.

breach of contract claim fails. On the other hand, if Jennings' public policy argument fails, JDSU is entitled to summary judgment on its breach of contract claim.[6]

The starting point in the analysis is to resolve whether the PIA's choice of law provision specifying the applicability of California law operates to require that California law governs JDSU's breach of contract claim and Jennings' contract unenforceability defense. As this is a diversity case, the forum state's, *i.e.* Virginia's, choice of law rules govern. *See Klaxon v. Stentor Mfg.*, 313 U.S. 487 (1941). Among those rules is that Virginia generally enforces a contractual choice of law provision, provided the jurisdiction chosen is reasonably related to the purpose of the agreement. *See, e.g., Hooper v. Musolino*, 234 Va. 558, 566, 364 S.E.2d 207, 211 (1988). Since JDSU's corporate headquarters is located in California, the choice of California law is permissible, and its law therefore governs the validity and construction of the PIA.

The essence of Jennings' public policy defense is that he needed to carry off proprietary documents for two reasons: (i) to pursue his wrongful discharge claim against the company, and (ii) to function as an effective Sarbanes-Oxley whistleblower. He argues that neither of these goals may be contractually burdened without running afoul of California's generalized public policy in favor of whistleblowing, cited *supra*.

---

[6] For its part, JDSU argues "Sarbanes-Oxley protects only lawful activity," and hence defendant's activity was unlawful because it violates the PIA. This argument begs the question. If it is contrary to public policy to enforce the PIA against Jennings, then Jennings was not acting contrary to any legal obligation by copying and retaining the documents. JDSU also cites cases standing for the proposition that confidentiality agreements are generally enforceable. But this does not prove they are uniformly enforceable; like all contracts, if they are contrary to public policy, they are unenforceable. *See Dirty Work Const., Inc. v. McCarroll*, 2003 WL 1233074 at *7 n.4 (Cal. Ct. App. 2003) (confidentiality agreement unenforceable if contrary to public policy) (citing cases). It is elementary that courts, in California and elsewhere, will not enforce contracts contrary to public policy. *See, e.g., Birbower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal.4th 119, 138; 70 Cal.Rptr.2d 304, 315 (Cal. 1998).

Although not without superficial appeal, this argument is, in the end, unpersuasive. It places more weight on the California public policy statement than the policy statement can bear. To begin with, the policy is a highly generalized declaration that does not even address either the enforceability of confidentiality agreements, or whether otherwise unlawful or tortious activity is excused or permitted as long as it arguably aids whistleblowing. By no means can the policy fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined. Endorsing such theft or conversion would effectively invalidate most confidentiality agreements, as employees would feel free to haul away proprietary documents, computers, or hard drives, in contravention of their confidentiality agreements, knowing they could later argue they needed the documents to pursue suits against employers under a variety of statutes protecting employees from retaliation for publicly reporting wrongdoing, such as Sarbanes-Oxley (18 U.S.C. § 1514A), the False Claims Act (31 U.S.C. § 3730), and the Fair Labor Standards Act (29 U.S.C. § 215(a)(3)), or other statutes prohibiting retaliation for activity in opposition to discrimination, such as Title VII (42 U.S.C. § 2000e-3(a)), the Americans with Disabilities Act (42 U.S.C. § 12203), and the Age Discrimination in Employment Act (29 U.S.C. § 623(d)). Indeed, were courts to adopt Jennings' argument, litigation would likely blossom like weeds in spring: for every legitimate whistleblower aided by this rule, many more disgruntled employees would help themselves to company files, computers, disks, or hard drives on their way out the door to use for litigation leverage or for mere spite. Nor would enforcing contracts like the PIA burden legitimate whistleblower activity, as putative whistleblowers would still be free to consult lawyers, pursue

and exhaust administrative remedies, and file their whistleblower claims, in the course of which pertinent documents could be obtained via legal process.[7]  Moreover, Jennings pursued a Sarbanes-Oxley claim administratively while the documents at issue were held by the Court.  In sum, while it is understandable and appropriate for California to adopt a policy encouraging whistleblowers to report their employers' violations of law, it does not follow from this that California meant by this declaration to invalidate confidentiality agreements and to authorize whistleblowers to steal or convert their employers' proprietary documents.  Succinctly put, Sarbanes-Oxley is not a license to steal documents and break contracts.

Although there appears to be no published decision squarely on point, Jennings understandably argues that *Fox Searchlight Pictures v. Paladino*, 106 Cal. Rptr.2d 906 (Cal. Ct. App. 2001) compels the conclusion that the PIA is unenforceable.  There, Paladino, Fox's in-house counsel, was terminated, ostensibly for poor performance.  Because Paladino believed the stated cause was a pretext for pregnancy discrimination, she consulted an attorney concerning bringing an action against Fox.  In the process of that consultation, she apparently orally disclosed to her attorney certain privileged information she had gained in the course of her duties

---

[7] Of course, on relatively rare occasions where circumstances arise raising a genuine concern that pertinent documents are likely to be destroyed, an emergency temporary restraining order may be sought to prevent this.  No such circumstances were alleged or exist here.  It is also worth noting that civil and criminal penalties may deter employers tempted to destroy documents.  *See, e.g.,* Rule 37(b), Fed. R. Civ. P. (discovery sanctions, including spoliation remedies); 18 U.S.C. § 1520 (criminal penalties for willful destruction of corporate audit records).  *See also Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D.Va. 2001) (noting that spoliation may occur even in the absence of a court order requiring production of particular documents, and further noting that in addressing spoliation, courts have "considerable discretion, including ordering dismissal, granting summary judgment, or permitting an adverse inference to be drawn against the party as a means of leveling the playing field"); Grenig & Gleisner, 1 *eDiscovery & Digital Evidence* § 11:12 (2006) (noting that several states recognize an independent cause of action for spoliation of evidence).

as Fox's in-house counsel. After receiving a copy of her forthcoming discrimination complaint from Paladino's attorneys, Fox filed suit against Paladino, alleging, *inter alia*, that her disclosures to her attorney violated her professional duty of confidentiality, fiduciary duty, and employment contract, which contained a confidentiality provision similar to the one in this PIA. The court rejected this claim, holding that the disclosures were lawful, and refusing to construe the employment contract (or Paladino's fiduciary duty or duty of confidentiality) as prohibiting disclosure of client confidences "in the course of seeking legal advice on a matter pertaining to those very confidences." *Id.* at 923 n.60. In sum, *Fox* stands for the proposition that under California law, an employee does not violate a contractual confidentiality agreement by *orally* disclosing proprietary information to her counsel in preparation for suit against the employer.

*Fox* does not carry the day for Jennings. It is meaningfully distinguishable. Thus, it did not address Sarbanes-Oxley and, significantly, it involved oral disclosures to an attorney not, as here, the physical appropriation and conversion of documents. Orally transmitting arguably confidential information to a lawyer with an eye to suing the company is quite different from physically carting away stacks of documents, disks, or computers belonging to the business without authorization to do so and in contravention of a confidentiality agreement. In particular, the *Fox* court's rationale in reaching its result was that Paladino would be completely unable to vindicate her rights were she prohibited from disclosing to her lawyer the confidential information at issue in some form. *See id.* at 923. Not so with Jennings, who was free to disclose to his attorney everything he knew about JDSU's tax problems, including any notes he might have made from pertinent documents. This distinction between oral and documentary transmission of proprietary information, while not addressed in *Fox*, is implicit in its reasoning,

and is supported by cases from other jurisdictions. Thus, the Fifth Circuit has sensibly held that "an employee's appropriation of records without permission for purposes of using them in a suit against a company" was not protected activity under the Fair Labor Standards Act. *Hodgson v. Sec'y of Labor*, 440 F.2d 662, 663 (5th Cir. 1971). Similarly, in *Jefferies v. Harris County Community Action Ass'n*, 615 F.2d 1025 (5th Cir. 1980), the court recognized that an employee's unauthorized transmission of confidential documents to a co-employee, for the purpose of calling attention to an unlawful employment practice, was not protected opposition activity under Title VII. Such opposition activity must be reasonable under the circumstances, and the document copying and transmission in that case did not qualify in this respect, since there was no evidence that documents would likely be destroyed if not copied. The rationale of these wrongful document retention cases is that an employee, even if aggrieved, should not engage in self-help by wrongfully retaining an employer's documents; but instead the employee should file suit and seek the documents via subpoena. While Jennings objects that this would frustrate attempts at effective Sarbanes-Oxley whistleblowing because documents could be shredded in the interim, some cases have recognized that an employee might be justified in retaining documents, or "surreptitiously copying" them, if there were a sufficiently persuasive showing that the documents would be destroyed. *See, e.g., Jefferies*, 615 F.2d at 1036. Here, however, there has been no such showing, nor indeed has Jennings alleged that these documents would have been destroyed had he not taken them. Because Jennings had legitimate methods of obtaining these documents for his counterclaims and the Sarbanes-Oxley administrative proceeding, namely, subpoenas, and because there is no contention the documents would have been destroyed in the

interim, it is not contrary to California public policy to enforce the confidentiality agreement.[8]

In conclusion, California's declared public policy does not invalidate the PIA or authorize Jennings to pilfer or convert JDSU's documents. Accordingly, summary judgment is warranted because undisputed facts reflect that Jennings breached the PIA by removing "proprietary information" and "property of the company" from JDSU's premises without authorization. *See* PIA, quoted *supra* at p.3.

Although summary judgment on JDSU's breach of contract claim must be granted as to liability, the extent of the breach and the appropriate remedy remains to be determined. In particular, it remains to be determined (i) which, if not all, of the documents Jennings removed are proprietary within the meaning of the PIA, (ii) whether any remedy besides return of the documents to JDSU is appropriate, and (iii) whether JDSU intends to pursue its other causes of action in this matter. A status conference for this purpose will be held at 10:00 AM, Wednesday, February 7, 2007.

An appropriate Order will issue.


Alexandria, Virginia
February 5, 2007

_____/s_____
T. S. Ellis, III
United States District Judge

---

[8] The parties' citations to *X Corp v. Doe*, 816 F. Supp. 1086 (E.D.Va. 1993) are unavailing. That case concerns primarily the crime-fraud exception to the attorney-client privilege, which is not at issue here.